1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHADEVEN JASON HARPER,

11              Petitioner,                    No. CIV S-03-0410 GEB GGH P

12        vs.

13   A. K. SCRIBNER, Warden,

14              Respondent.            FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding through counsel with a petition for writ of

18   habeas corpus.  Petitioner challenges his 1999 conviction on charges of assault with a

19   semiautomatic firearm with a gun enhancement (Cal. Penal Code §§ 245(b), 12022.5(a)), grossly

20   negligent discharge of a firearm (Cal. Pen. Code § 246.3), being a felon in possession of a

21   firearm (Cal. Pen. Code § 12021(a)) and one prior serious felony (Cal. Pen. Code § 667).

22   Petitioner is serving a sentence of twenty-one years in prison.

23              This action is proceeding on the amended petition filed October 9, 2003.

24   Petitioner raises the following claims: (1) the trial court's denial of a motion for trial continuance

25   in order to obtain the attendance of a defense witness violated petitioner's Fourteenth

26   Amendment right to due process and Sixth Amendment right to present a defense; (2) jury

1

misconduct and jury bias violated petitioner's Sixth Amendment right to a fair trial by a panel of impartial jurors; and (3) imposition of a sentence enhancement under Cal. Pen. Code § 12022.5 violated petitioner's Fourteenth Amendment right to equal protection.

After carefully considering the record, the court recommends that the petition be denied.

II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The AEDPA applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir. 1998), citing Lindh v. Murphy, 1177 S. Ct. 2059 (1997).  The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application

of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In reviewing a state court's summary denial of a habeas petition, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590 (1991)). In the instant case, the California Supreme Court issued a summary denial of

3

1   petitioner's petition for review, which raised the claims raised in the instant petition.

2   Respondent's Answer, Exhibit E.  Accordingly, the court looks through to the reasoned decision

3   of the California Court of Appeal.

4   III.  Background

5            The opinion of the California Court of Appeal contains a factual summary.  After

6   independently reviewing the record, the court finds this summary to be accurate and adopts it

7   below.

8            Prosecution case

9            Around 11:00 p.m. on August 3, 1997, Sacramento Police Officer
         Michael Smith and other officers converged on a location in South
10       Sacramento where an armed kidnapping had been reported.  The
         police controlled car and foot traffic in the vicinity while the
11       incident was being resolved.

12       As Officer Smith and Officer Pete Diaz walked back to their patrol
         cars, they heard gunshots nearby.  They ran toward the shots.
13       Seeing a group of young people scattering, Officer Diaz asked a
         girl who had the gun.  She pointed and said the one in the red shirt.
14       The officers saw a man wearing a red shirt and long black shorts,
         afterward identified as defendant, running away; he was carrying
15       something in his hand.

16       As Officer Smith gave chase, his radio dropped from his holster to
         the ground.  Turning toward Officer Diaz and facing forward,
17       Officer Smith saw defendant standing about 50 yards in front of
         him and pointing a gun toward Smith's head.  Defendant fired
18       three times.  Officer Diaz hit the ground and Officer Smith dove
         behind a tree; neither was injured.  Defendant turned and ran.
19
         Curtis Hagen, who lived in the area, was standing outside when a
20       black man dressed in a red and white shirt and black pants ran his
         way.  Hagen ran to the nearest house and demanded to be let in.
21       As his neighbors pulled him inside, Hagen looked toward the street
         and saw the man point a firearm down the street and fire it.  Later
22       seeing defendant in custody, Hagen recognized him as the person
         who had fired the shot.
23
         Officers Smith and Diaz chased defendant to the nearest corner and
24       took cover behind a car.  Officer Smith directed backup officers,
         including K9 Officer Michael Garner and his canine unit "Luke,"
25       to the spot where Smith had last seen defendant.  Officer Bryon
         Schrum, driving up to the area, saw defendant running out of a
26       yard and yelled to him to stop, but defendant ran back and jumped

over a fence.  Officer Schrum chased defendant over several
fences, then saw other officers and Luke coming at defendant from
the other direction.  Defendant unsuccessfully tried to jump another
fence, but was detained by Luke, who bit him on the legs.
Defendant continued to struggle as other officers tried to subdue
him; he was finally handcuffed after being kneed several times in
the face.  Officer Smith identified defendant as the shooter.
Defendant was taken to the hospital.

Before being taken off the investigation, Officer Smith found
several nine-millimeter shell casings on the ground in the area
where defendant shot at him.  Officer John Pike found a spent
bullet that had shattered the window of a nearby parked van.  Spent
.380 casings were also found in the area.  Searching defendant at
the hospital, Officer Schrum found a fully loaded nine-millimeter
magazine and a loose live round in defendant's right front pants
pocket.

The next day, crime scene investigators found a nine-millimeter
semiautomatic handgun under some leaves in a yard in the vicinity
of the shooting.  This gun proved to have fired the cartridge casings
previously found on the street.  The bullets and magazine found on
defendant's person were consistent with the firearm found in the
yard.

Defense case

Defendant testified that he was attending a family barbecue in the
neighborhood on the evening of the crimes.  He had previously
encountered a couple of young women and invited them to the
barbecue.  Around 11:00 p.m., he walked past the police cars
parked on the street, met one of the women, and waited on the
sidewalk while she walked to a house to get the other woman.  He
was accosted by several men who threw gang signs and tried to rob
him; one displayed a gun.  Defendant punched one man, then ran,
hearing gunshots from behind.  He jumped a fence and hid in a
yard, where the police dog found him.  According to defendant, he
had no firearm, magazine, or bullets that night and did not shoot at
anyone.  He admitted a prior felony conviction.
A defense investigator testified that he had conducted an
experiment at the scene and determined that he could not recognize
another person at the distance at which Officer Smith claimed to
have seen defendant shooting.  An expert on eyewitness
identification testified as to the unreliability of such identifications
under circumstances such as those that existed in this case.

On cross-examination of Officer Shaunda Davis, defense counsel
elicited that a juvenile witness named Booth, who was riding a
bicycle in the area, said he heard shots, saw a man in a white shirt
shooting, and saw another man in a red shirt and dark shorts
running from a police officer.  Officer Davis also admitted that she

1      had transported a witness named Frye for a field showup and he
had failed to identify defendant as the shooter.

2

3  Respondent's Answer, Ex. D at pp. 3-6.[1]

4  IV.  <u>Discussion</u>

5      A.  <u>Denial of a Continuance</u>

6          Petitioner's first claim is that his Fourteenth Amendment right to due process and

7  his Sixth Amendment right to present a defense were violated when the trial court denied his

8  request for a trial continuance in order to obtain the attendance of a witness who was ill at the

9  time of trial.  The California Court of Appeal fairly described the background to this claim as

10  follows:

11      Defendant contends the trial court abused its discretion by denying
him a continuance to try to obtain the testimony of Doris Walker.
12      According to defense counsel, Walker would have testified that she
saw two black men on the night of the shooting, one with a red
13      jacket and a lot of hair, the other in a white shirt, and that the
second man fired the shots from the spot where other witnesses
14      said they saw defendant shooting.[2]  We conclude that the trial court
did not abuse its discretion by denying a continuance.  Defense
15      counsel made no compelling showing that Walker was unavailable
because she was sick.  Moreover, counsel did not specifically
16      request any particular length of time for a continuance, admitting
that any length of time she might request would be "arbitrary."

17

18      On the ninth day of what had been predicted to be a five-day trial,
defense counsel told the trial court:

19      Walker had been a prospective prosecution witness but the
prosecutor had not called her.  Defense counsel decided to call her.
20      Counsel talked with her the night before; she said she was sick.
Counsel called back that morning, and Walker said she was
21      extremely ill, on a breathing machine, and under doctor's orders to
remain on bed rest; therefore she did not come to court that day.
22      Counsel told Walker she could be subject to a bench warrant.

23  _____

24      [1]  A portion of this opinion was published at <u>People v. Harper</u>, 82 Cal. App. 4th 1413
(2000).

25      [2]  Thus, her testimony, if given as counsel anticipated, would have supported the story
26  that the eyewitness named Booth told Officer Davis – that someone other than defendant (who
was wearing a red shirt) was the shooter.

Counsel then asked the court for a "short" continuance.  The court said no: "It should have been continued a week ago."  However, the court listened to counsel's offer of proof (which we have given above).

The court asked whether counsel had checked with Walker's doctor; counsel said she had tried but had not reached the person whose name Walker gave her.  After determining that Walker had been served with a subpoena and that counsel had a return, the court agreed to issue a bench warrant.

Shortly afterward, counsel reported that she had called Walker's residence; someone else had answered the phone and said Walker was on a breathing machine and could not come to the phone.  Counsel again asked for a "short" continuance.  The court wanted to know how long.  Counsel said: "Your Honor, I can ask for an arbitrary day or two days, but it would be arbitrary since I haven't talked to the doctors.  I can only go on what this witness is telling me."  The court declined the request.  The defense then rested.

(Respondent's Answer, Ex. D at 6-8.)

Subsequent to the filing of the amended petition for writ of habeas corpus in this matter, petitioner requested discovery for the purpose of determining "what [potential witness Walker] saw, and what she reported to the police, and to get to the bottom of why her testimony was never presented to the jury."  (Memorandum of Points and Authorities in Support of Motion for Leave to Conduct Discovery, filed January 6, 2004, at 2.)  Petitioner also requested funds to employ an investigator to find and interview Ms. Walker "to determine if Ms. Walker would have, or could have testified at trial, and whether Petitioner's counsel was diligent in seeking a continuance."  (Petitioner's Reply to Response to Motion for Leave to Conduct Discovery, filed January 26, 2004, at 2.)  On February 12, 2004, this court granted petitioner's motion for funds to conduct the requested discovery and also authorized augmentation of the record to include Ms. Walker's deposition testimony, should it be obtained.  (Order Granting Motion for Leave to Conduct Discovery, filed February 12, 2004.)

Petitioner subsequently filed a motion to take the deposition of Ms. Walker.  (Notice of Motion and Motion for Leave to Conduct Discovery, filed August 10, 1004.)  Therein, petitioner explained that his investigator had located Ms. Walker but that she denied knowing

7

anything about the shooting, denied reporting anything to the police, and said that someone had

stolen her identification around the time of the incident.  (Id. at 2; Memorandum of Points and

Authorities in Support of Motion for Leave to Conduct Discovery, filed August 10, 2004, at 2.)

Petitioner's motion to take the deposition of Ms. Walker was granted.  (Order, filed September 2,

2004.)  Counsel for petitioner subsequently informed the court that petitioner's trial investigator

contacted Ms. Walker after learning that she would not cooperate with the habeas investigator

"and obtained from her an informal statement that is consistent with the statement she gave to the

police shortly after the shooting."  (Declaration of Joseph J. Wiseman in Support of Motion for

Extension of Time to File Petitioner's Traverse," at 2.)  In his subsequently filed traverse,

petitioner states that he "located and interviewed Doris Walker" and that she "currently claims

she is now willing, and was then willing, to testify to what she saw on the night of the crime."

(Traverse at 4.)  Petitioner does not explain the nature of Ms. Walker's proposed testimony, nor

has a transcript of her deposition, if any, been filed with the court.

        The first question to be resolved is whether petitioner is entitled to an evidentiary

hearing despite the fact that nowhere in the records of this case has counsel requested such a

hearing.  Rule 8 of the Habeas Corpus rules instructs the *judge* to "review the answer, any

transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to

determine whether an evidentiary hearing is warranted."  The answer does not suggest that an

evidentiary hearing is necessary, and the undersigned could determine the petition on the

transcripts themselves.  Thus, it was critical for counsel to expand the record with respect to the

substance of Ms. Walker's testimony – an opportunity clearly afforded by the court.  Yet the

specific proffer, by way of declaration or deposition, has not been submitted.  The court has

suspicion at this point about the bona fides of Ms. Walker's testimony, and perhaps counsel

shares in those misgivings.  Based on the record of this proceeding, the court will not hold an

evidentiary hearing.  Thus, the court turns to the merits of the petition without such hearing.

\\\\\\

1        The matter of whether to grant a continuance is traditionally within the discretion

2  of the trial judge.  Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322 (1940).  There are no

3  specific tests for deciding when a denial of a continuance is so arbitrary as to violate due process.

4  Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 850 (1964).  "The answer must be found in

5  the circumstances present in every case, particularly in the reasons presented to the trial judge at

6  the time the request is denied."  Id.  However, broad discretion is afforded trial judges in the

7  matter of deciding continuances.  Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 1616

8  (1983).

9        On direct appeal from a federal criminal conviction, the Court of Appeals for the

10  Ninth Circuit balances four factors in determining whether a trial court was unreasonable in

11  denying a motion to continue: (1) the appellant's diligence in preparing his case; (2) the

12  likelihood that the continuance would serve a useful purpose; (3) whether the continuance would

13  inconvenience the parties, the court, or other witnesses; and (4) whether the appellant was

14  prejudiced by the district court's refusal to grant the request for a continuance.  United States v.

15  Rivera-Guerrero, ___ F.3d ___, 2005 WL 2658967 (9th Cir. 2005) at *6.  See also United States

16  v. Flynt, 756 F.2d 1352, 1359 (9th Cir.1985).  None of the first three factors is ordinarily

17  dispositive, but the defendant must establish prejudice.  Rivera-Guerrero, 2005 WL 2658967 at

18  *6.  When a continuance is sought to obtain witnesses, "the accused must show who they are,

19  what their testimony will be, that the testimony will be competent and relevant, that the witnesses

20  can probably be obtained if the continuance is granted, and due diligence has been used to obtain

21  their attendance on the day set for trial."  United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir.

22  1978) (quoting Leino v. United States, 338 F.2d 154, 156 (10th Cir. 1964)).  A conviction will

23  not be reversed for failure to grant a continuance unless the federal appellant can show that he

24  suffered actual and substantial prejudice.  Martel v. County of Los Angeles, 56 F.3d 993, 995

25  (9th Cir.1995) (en banc).  While the court is not obliged to apply the Ninth Circuit tests in this

26  AEDPA context, the criteria are useful in analyzing the issue.

1        The California Court of Appeal concluded that the trial court did not abuse its

2   discretion in denying petitioner a continuance of the trial in order to obtain the attendance of

3   witness Walker.  The appellate court reasoned as follows:

>       Defense counsel offered no declaration from Walker or her doctor
>       attesting to Walker's illness.  Indeed, the trial court had no
>       information from Walker's doctor at all.  Nor did counsel offer the
>       trial court any firm estimate of how long a continuance she thought
>       she needed.  (Contrary to defendant's present assertion, counsel did
>       not actually ask for either one day or two days: as noted above, she
>       said, "I can ask for an arbitrary day or two days, but it would be
>       arbitrary . . . .")  The trial court thus had no way of knowing how
>       long the trial might be delayed if it were put on hold until Walker
>       either appeared as a witness or definitively became unavailable to
>       do so.  Counsel admitted that any length of time she requested
>       would be "arbitrary."  The trial court would have abused its
>       discretion by granting an open-ended continuance, and on
>       counsel's admission the court had no reliable information with
>       which to limit the continuance to any set length of time.
>
>       Because counsel neither made a compelling showing that Walker
>       was, in fact, sick, nor requested a specific length of time for a
>       continuance, there was no showing that Walker's evidence "could
>       [have] be[en] obtained within a reasonable time" if a continuance
>       had been granted.  (People v. Beeler, supra, 9 Cal.4th at p. 1003.)
>       Therefore, we need not consider whether Walker's testimony
>       (assuming it could have been obtained and would have conformed
>       to counsel's offer of proof) would have been material.  (Ibid.)
>       Defendant has shown no abuse of discretion.

17  (Respondent's Answer, at 8-9.)

18       After a review of the state court record in this case, this court concludes that

19  petitioner's right to due process and to present a defense were not violated by the trial court's

20  denial of petitioner's request for a trial continuance to obtain the testimony of Ms. Walker.  Of

21  course, criminal defendants have a constitutional right, implicit in the Sixth Amendment, to

22  present a defense; this right is "a fundamental element of due process of law."  Washington v.

23  Texas, 388 U.S. 14, 19 (1967).  However, petitioner was able to present his defense of mistaken

24  identity through his own testimony and the cross-examination of prosecution witness Shaunda

25  Davis.  Specifically, Officer Davis admitted that another eyewitness had identified someone else

26  as the shooter and that a third witness was unable to identify petitioner from a field showup.

10

1   (Reporter's Transcript on Appeal (RT) at 396, 408-09.)  Further, more than half-way through

2   trial, petitioner was not able to give the trial judge a reliable estimate of when this witness would

3   be available, if ever.  (See RT at 931-37.)  Under these circumstances, the trial court's decision to

4   deny petitioner's motion for a continuance was certainly not arbitrary.

5           Petitioner was not diligent in preparing his case, waiting until eight days into trial

6   to make a serious attempt to obtain Ms. Walker as a witness.  It was unclear whether a

7   continuance would serve a useful purpose because counsel had no clear idea when, or even if, the

8   witness would ever be available.  In other words, petitioner was unable to show that Ms. Walker

9   could be obtained as a witness even if the continuance was granted.  A continuance of trial under

10  circumstances where eight days of a projected five day trial had already concluded would clearly

11  be prejudicial to the court and other witnesses.  Further, petitioner has not established prejudice

12  from his failure to obtain Ms. Walker as a witness.  Cf. Rivera-Guerrero, 2005 WL 2658967

13  (denial of a continuance violated due process where it resulted in defendant's inability to present

14  **any** evidence in support of his defense theory); United States v. Pope, 841 F.2d 954, 958 (denial

15  of a continuance violated due process where it prevented the defendant from introducing the only

16  testimony that could have supported his defense theory).  This court again notes that the actual

17  testimony of Ms. Walker is still unclear even after obtaining the opportunity for discovery in this

18  habeas corpus proceeding.  Accordingly, petitioner is unable to establish that exclusion of her

19  actual testimony rendered his trial fundamentally unfair.  The court cannot say that the state

20  appellate court's decision to reject petitioner's claim in this regard was contrary to clearly

21  established Supreme Court law or an objectively unreasonable application of law to the facts of

22  this case.  See 28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to relief on this

23  claim.[3]

24  _____

25          [3] Petitioner cites several cases which discuss the due process right to obtain compulsory
    process and the right to introduce relevant evidence in a criminal trial.  (Am. Pet. at 19-20.)
    Those cases are not on point.  The trial judge did not exclude Ms. Walker's testimony or refuse
26  petitioner the use of compulsory process to obtain her presence at trial.  Rather, he denied a mid-

1          B.  Juror Misconduct and Bias

2                  Petitioner claims that juror misconduct and bias resulted in a denial of his right to

3   a fair trial by a panel of impartial jurors.  Petitioner's arguments center around two specific

4   aspects of the jury deliberations.  First, he complains that during deliberations the jury

5   improperly discussed "the extrinsic matter of petitioner's prior felony" and concluded that

6   because petitioner had suffered the prior conviction when he was only nineteen years of age, he

7   must be a "hardened criminal."  (Am. Pet. at 20.)  Petitioner contends that "[f]or the jury to use

8   Petitioner's prior conviction as evidence that he was now a hardened criminal amounted to

9   improper introduction of character evidence."  (Id. at 21.)  Second, petitioner argues that the

10  jurors were improperly concerned with the length of the deliberations, resulting in a rush to

11  judgment.

12                 The state court record reflects that petitioner's trial counsel filed a post-trial

13  motion for new trial based, in part, on juror misconduct.  (CT at 264.)  The motion was supported

14  by three juror affidavits.  (Id. at 272-79.)  The California Court of Appeal fairly summarized the

15  contents of the juror affidavits and the trial court's ruling on the motion for new trial as follows:

16          The first juror's declaration stated in part:

17          "During deliberations jurors were so loud [the] noise level was
            deafening and I could not think.
18
19          "During deliberations there was intimidation in the form of
            heckling, laughter, and being shouted at when some juror's [sic]
            were trying to express their doubts regarding specific points.
20
21          "During deliberations one juror said 'if we are still here in
            February, I am going to get everyone's address and tepee [sic] your
22          house.'[4]

23  trial continuance in the face of substantial uncertainty as to the need for and availability of this
    witness.  Even though the trial court's ruling on the request for continuance had the effect of
24  excluding Ms. Walker's testimony, for the reasons explained above petitioner has failed to show
    that he was prejudiced by its absence.
25
26          [4]  We accept the People's surmise that "tepee" should be construed as "T.P." an
    abbreviation for the practice of "toilet-papering" a house.  Defendant offers no other

"During deliberations I had unanswered questions regarding the charges and the legalese in the instructions.  I did not understand that questions could be submitted to the Court.

"During deliberations one juror said, referring to read back testimony, 'do we have to hear the whole "freaking" thing again.'

"During deliberations on Friday, I did not get an opportunity to fully deliberate or get to hear all of read back that I felt necessary.

"Also during deliberations on Friday I felt I was forced to vote on guilt before we deliberated adequately and discuss [sic] all the issues.  I was physically exhausted and had a migraine headache."

The second juror's declaration stated in part:

"Upon initial entry in the jury room for deliberations, one juror said we should be out of here in three hours.

"During deliberations I had a question regarding if I believed shooting was in defense, would that mitigate – but jury foreman never submitted question.

"During deliberations juror's [sic] would interrupt me when I attempted to discuss case – told me I was biased, and demonstrated animosity toward me.

"During deliberations when juror's [sic] with doubts began to discuss case, the other jurors interrupted them and would not allow them to fully discuss their ideas and thoughts.

"During deliberations on Friday afternoon, one juror said she would tepee [sic] our houses if we were there much longer because she was starting a new job.

"Also during deliberations on Friday, some jurors did not want to hear additional read back, although I felt it was necessary.

"During deliberations there was some discussion regarding the defense attorney proving his [sic] innocence.

"During deliberations there was discussion regarding defendant must already be a hardened criminal if, at eighteen, he has a felony conviction.

"During deliberations one juror told another juror to shut up when that juror was expressing her doubt.

interpretation of the term.

"During deliberations the verdict forms were not read individually when jurors voted.

"During deliberations jurors just voted on whether or not he [sic] was the shooter, but not on each individual count.

"During deliberations I did not understand that the lessor [sic] assault charge would be a separate count.  I thought there were only two counts left.

"At the point when the Court asked if it was a true and correct verdict, I hesitated because my answer was no, but I was concerned of the consequences (whether I would he held in contempt) if I said no and did not know how to handle the situation."

The third juror's declaration stated in part:

"In hallway, one juror commented that he was upset that [defendant] used his [the juror's] name during the trial.  The discussion continued with other jurors in the hallway that [defendant] could possibly get their addresses off the Internet and said that made them uncomfortable.

"Numerous jurors argued that the defense attorney did not do a good job of proving [defendant]'s innocence.

"Numerous jurors stated [defendant] is only 19 and already has a felony, he must have committed a serious crime.

"I specifically requested read back of several officers specifically, Mr. Pike and the foreperson did not include Officer Pike on the initial request for read back.  Officer Pike's re-read testimony was never read.

"I saw a list requesting re-read with Officer Pike's name on it.  The next day there was a different form requesting re-read that did not have Officer Pike's name on it and that list was shorter.

"The stress of the deliberations caused me concern regarding the health of myself and my unborn child (I was diagnosed a high risk pregnancy).  I sent two messages to the judge via the court attendant.  The court attendant told me that it was unlikely the court would relieve me.  On Friday, I personally asked the judge regarding needing to start deliberations early or late so I could attend a prenatal appointment.  I never received a response.

"During the trial and during deliberations several jurors discussed whether the judge was Black (African American) or White (Caucasian) in reference to why he sustained or approved certain objections.

14

"Jurors questioned whether the verdict had to be unanimous or not, and if not unanimous, whether they would have to come back on Monday.  We asked the court attendant if there was a way to ask the judge – she said you have to decide.

"When the jury was polled I hesitated because my true answer was no, but I said yes because of the concerns regarding my health and to end deliberations.  I tried to ask a question before answering poll but the court just instructed me to listen without answering my question."

At argument on the motion, the trial court responded to only one point raised in the declarations.  The court noted that the pregnant juror had brought her problem to the court attendant's attention, the court attendant had notified the court, and the court had tried to contact counsel, but before counsel arrived, the jury informed the court it had reached a verdict.  The court then denied the motion.

(Opinion at 9-14.)

The California Court of Appeal noted that while the juror affidavits contained numerous complaints of juror misconduct, petitioner offered argument as to only two: the jurors' discussion of his prior record and the jury's apparent concern with the length of deliberations. (Opinion at 14.)  Citing People v. Turner, 8 Cal .4th 137, 214 n.19 (1994), the appellate court concluded that petitioner had waived any other claims of juror misconduct "for failure to make a developed argument."  (Id.)[5]  With respect to the two claims the appellate court deemed cognizable, the court ruled as follows:

While the "hardened felon" remarks might sound disturbing, defendant can show no prejudice from them.  It is mere speculation that such remarks either revealed an actual bias against defendant,

---

[5] The portion of Turner cited by the state appellate court is as follows:

We discuss those arguments that are sufficiently developed to be cognizable. To the extent defendant perfunctorily asserts other claims, without development and, indeed, without a clear indication that they are intended to be discrete contentions, they are not properly made, and are rejected on that basis.

8 Cal. 4th at 214 n.9.  Turner was abrogated on other grounds by People v. Griffin, 33 Cal.4th 536, 555 n.5 (2004).

such that the juror making the remarks was unable to deliberate objectively on the facts of the case, or influenced any other juror to form such a bias.  The case ultimately turned on the physical and eyewitness evidence against defendant and the implausibility of his story – as to which the jury could properly consider his felony conviction for its effect on his credibility.  The fact that the jury convicted defendant only of a lesser offense on count 1 shows that the jury was not unduly swayed by any juror's view of defendant's background.

The remarks defendant adduces to prove that the jury was rushing to conclude deliberations, or that some jurors felt pressured to do so, likewise fail to show prejudice.  The remark at the start of deliberations that they should take only three hours is insignificant: jurors often begin with unrealistic expectations which are dispelled by the deliberating process itself.  (In any event, this jury took far longer than that.)  Nor is it significant that the jurors disagreed among themselves over how much testimony they needed to hear read back: such disagreements are a normal part of deliberations.  The "tepee" remark made by one juror was evidently a joke, even if based on exasperation.  Finally, the claim of any juror that he or she rendered a verdict for any reason other then his or her views of the evidence is inadmissible under Evidence Code section 1150, subdivision (a), which provides in part: "No evidence is admissible to show the effect of . . . statement[s], conduct, condition[s], or event[s] upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

The trial court did not abuse its discretion by denying defendant's new trial motion.

(Opinion at 14-16.)

Respondent argues that petitioner's claim of jury bias/misconduct is "partially unexhausted" and "partially waived."  (Respondent's Answer at 10.)  He contends that any claims except those that deal with the jurors' discussion of petitioner's prior conviction and the length of the deliberations are unexhausted and subject to a procedural default because of the state court's conclusion, described above, that these claims were waived.[6]

_____

[6] Respondent cites Castille v. Peoples, 489 U.S. 346, 109 S. Ct. 1056 (1989) in support of his argument that some of petitioner's claims of juror bias are unexhausted.  That case is distinguishable.  Castille held that raising a claim for the first and only time in a petition for discretionary review to a state's highest court does not satisfy the exhaustion requirements of 28 U.S.C. § 2254.  Id. at 1059.  Here, petitioner raised his claims in an appeal of right to the California Court of Appeal and then in a petition for review to the California Supreme Court.

1    A review of the amended petition for writ of habeas corpus reflects that in his

2 claim before this court, as in his claim to the California Court of Appeal, petitioner focuses his

3 arguments on only two instances of juror misconduct described in the juror affidavits: the jurors'

4 improper discussion of his prior conviction and their concern with the length of the deliberations.

5 Petitioner describes his claim concerning the prior conviction as "the significant juror

6 misconduct claim." (Am. Pet. at 21.)  In the traverse, petitioner specifically limits his claims to

7 the jurors' discussion of his prior felony conviction and the jury's concern with the length of

8 deliberations.  (Traverse at 5-6.)  He notes that these particular claims have been fully exhausted

9 in the state courts.  (Id.)  Although the amended petition does contain reference to other alleged

10 instances of improper juror conduct, such as discussions concerning "a failure on the part of the

11 defense to prove Petitioner's innocence" and "the racial background of the judge with regard to

12 his rulings on matters of law," (see Am. Pet. at 21), it does not appear to this court that petitioner

13 intended to raise additional claims by virtue of these remarks.  On the contrary, it appears that

14 petitioner has chosen to pursue in his federal habeas petition only the two claims he believes

15 have the strongest merit.  After a careful review of the pleadings filed in this court, the court does

16 not construe petitioner's comments about other examples of juror conduct as separate habeas

17 claims and will not analyze them as such.[7]

18    Even assuming arguendo that petitioner intended these miscellaneous assertions to

19 be separate habeas claims and that he failed to exhaust them in state court, they should be denied

20 pursuant to 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied

21 on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

22 courts of the State").  A federal court considering a habeas petition may deny an unexhausted

23

24 The state courts therefore had an adequate opportunity to address petitioner's claims.
Accordingly, the holding of Castille has no application to this case.

25    [7]  Because of this court's conclusion that petitioner has not raised a separate claim by
virtue of his remarks concerning other instances of juror bias/misconduct, the court will not
26 address whether these "claims" are subject to a procedural default.

17

claim on the merits when it is perfectly clear that the claim is not "colorable." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir.2005). Petitioner's vague and unsupported comments regarding other possible instances of juror bias/misconduct are too conclusory to warrant the granting of habeas relief. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'"). Any such claims are not "colorable" and should be denied. There is no dispute that petitioner fully exhausted his claims that the jury committed misconduct when it discussed his prior conviction and the length of deliberations. Accordingly, this court will analyze those claims on the merits.

While jury exposure to facts not in evidence deprives a defendant of the right to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment, Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988); see also Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir.1993) (introduction of extraneous evidence of prior conviction during deliberations constitutes error of constitutional proportions), the point here is that the alleged prior conviction was not extrinsic to the trial. Thus, there was no juror misconduct. The fact, if it is a fact, that the jurors may have overemphasized or improperly utilized the prior conviction, is simply an assertion that juror deliberations went awry in the sense that the jurors should not have deliberated as they did. As such, the claim is unreviewable in habeas corpus because "improper" jury deliberations that "wrongly" view evidence or appear to violate jury instructions are not subjects which can overturn a verdict.

This case proceeds under AEDPA, and one looks first to established Supreme Court authority for direction. That direction is found in Tanner v. United States, 483 U.S. 107, 107 S. Ct. 2739 (1987), in which the Supreme Court refused evidence elicited from a juror that her co-jurors had consumed alcoholic beverages during the trial. The Supreme Court, concerned that post-verdict investigation into the jury's verdict to see, *inter alia*, whether instructions had been followed, whether jurors had "played nice," and the like, would not permit the jury system

1  to survive the constant scrutiny to perfect the system.  Any review of juror deliberations could

2  only be authorized where information truly "external" had been presented or sought out.  Thus, a

3  failure to follow jury instructions (commenting on defendant's failure to testify) in deliberations

4  is non-actionable, United States v. Rutherford, 371 F.3d 634, 640 (9th Cir. 2004), as is improper

5  comment on the absence of a co-defendant, United States v. Falsia, 724 F.2d 1339 (9th Cir.

6  1983).  Juror statements on feelings whether availability of therapy warranted a life sentence are

7  unreviewable.  Beardslee v. Woodford, 358 F.3d 560, 591 (n.22) (2003).  See also Grotemeyer v.

8  Hickman, 393 F.3d 871 (9th Cir. 2004) (court refused to permit an evidentiary hearing on juror

9  comments: (1) that the juror had been through this before, and the defendant was guilty; (2) that

10  the juror referred to her own medical expertise in opining that the defendant was mentally ill; (3)

11  that an insanity defense should have been mounted; (4) that the defendant, if convicted, would

12  receive adequate health care.).   Fed. R. Ev. 606(b) which codifies the exclusion of impeachment

13  of verdict testimony by jurors is fully applicable in habeas corpus proceedings, Fed. R. Ev.

14  1101(e); Beardsleee, supra.

15           In this case, discussions among petitioner's jurors regarding the fact of

16  petitioner's prior conviction and the length of the deliberations did not involve extrinsic

17  information.  Petitioner's prior conviction was introduced into evidence through a stipulation of

18  the parties, and the jury was instructed to accept as true the fact of the prior conviction.  (CT at

19  217.)  This information also provided the basis for the charge against petitioner of being a felon

20  in possession of a weapon.  In addition, the jury was specifically instructed that it could consider

21  evidence of a witness' prior conviction in determining the believability of that witness.  (Id. at

22  195, 199.)  The fact that petitioner had suffered a prior conviction came from evidence lawfully

23  admitted at trial and not from a third party or any other outside source.  Under these

24  circumstances, petitioner is unable to show that prejudicial outside information tainted his jury.

25           Similarly, the jury's alleged concern with the length of the deliberations is simply

26  another assertion of deliberation error.  There is no evidence in the record that the jurors rushed

to judgment or otherwise ignored their duty to deliberate.  The statements made in the individual

juror affidavits do not establish that concern about time constraints actually caused the jurors to

ignore their obligation to reach a careful decision.  In this regard, jurors are presumed to have

performed their official duties faithfully.  Cavness v. United States, 187 F.2d 719, 723 (9th Cir.

1951).  As discussed by the state appellate court, remarks contained in the jurors' affidavits to the

effect that the deliberations should only take three hours, that jurors disagreed as to whether

certain testimony should be read back, and that a juror threatened to "tepee" other jurors' houses,

were either a normal part of deliberations or made in jest and, in any event, are inadmissible to

challenge the verdict.  The state law mirrors federal law on preclusion of review of intrinsic jury

deliberations.

  C.  Sentencing Error

    In his final claim, petitioner contends that the imposition of a sentence

enhancement pursuant to Cal. Pen. Code § 12022.5 violated his right to equal protection because

the enhancement is not applied consistently to similarly situated criminal defendants.  In the

published portion of its opinion, the California Court of Appeal found that this claim was waived

pursuant to California state law because it was raised in a perfunctory manner without argument

or citation to authority.  Harper, 82 Cal. App. 4th at 1419 n.4.[8]  Petitioner subsequently raised his

equal protection claim before the California Supreme Court in a petition for review, but it was

summarily denied.  (Respondent's Answer, Ex. E.)

    Respondent contends that petitioner's claim in this regard is unexhausted because

it was considered waived by the California courts and petitioner would therefore be procedurally

barred from raising the claim again in state court.  Alternatively, respondent urges that the claim

be denied on the merits.

\\\\\

---

[8]  The court also held that the trial court properly imposed a four-year enhancement for defendant's personal use of a firearm.  Id. at 1416-19.

1    This court concludes that even if petitioner's equal protection claim is not

2    exhausted, it should be denied pursuant to 28 U.S.C. § 2254(b)(2).  Petitioner's claim of

3    sentencing error is not cognizable in this federal habeas corpus proceeding.  Habeas corpus relief

4    is unavailable for alleged errors in the interpretation or application of state sentencing laws by

5    either a state trial court or appellate court.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th

6    Cir. 1994); Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state sentence

7    "is not based on any proscribed federal grounds such as being cruel and unusual, racially or

8    ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are

9    matters of state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  The

10   Ninth Circuit has specifically refused to consider state law errors in the application of state

11   sentencing law.  See, e.g., Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (holding

12   that whether assault with a deadly weapon qualifies as a "serious felony" under California's

13   sentence enhancement provisions is a question of state sentencing law and does not state a

14   constitutional claim).

15   Petitioner has not cited any federal court decision in support of his claim that his

16   right to equal protection was violated when the state court imposed a sentence enhancement

17   pursuant to Cal. Pen. Code § 12022.5.  See Holgerson v. Knowles, 309 F.3d 1200, 1201-02 (9th

18   Cir. 2002) (in determining in a habeas action whether out-of-state convictions were properly

19   considered in sentencing petitioner under California's Three Strikes Law, the question is not

20   whether the California Supreme Court was correct but whether California's decision to affirm the

21   judgment of conviction was contrary to, or involved an unreasonable application of, clearly

22   established federal law, cert. denied 538 U.S. 1005 (2003).  In addition, there is no evidence that

23   petitioner's sentence is cruel and unusual, racially or ethnically motivated, or enhanced by

24   indigency.  Accordingly, petitioner has failed to establish a colorable federal claim.

25   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

26   application for a writ of habeas corpus be denied.

1          These findings and recommendations are submitted to the United States District

2     Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3     days after being served with these findings and recommendations, any party may file written

4     objections with the court and serve a copy on all parties.  Such a document should be captioned

5     "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6     shall be served and filed within ten days after service of the objections.  The parties are advised

7     that failure to file objections within the specified time may waive the right to appeal the District

8     Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9     DATED: 11/9/05

10

11                                                     /s/ Gregory G. Hollows

12                                              _____
                                               GREGORY G. HOLLOWS
13                                              UNITED STATES MAGISTRATE JUDGE

      ggh:8
14    harper410.157

15

16

17

18

19

20

21

22

23

24

25

26